1 **WO**

IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF ARIZONA

| | |
|---|---|
| Roanna T. Todacheeny, | No. CV 05-942-PHX-NVW |
| Plaintiff, | **ORDER** |
| vs. | |
| JoAnne B. Barnhart, Commissioner of Social Security, | |
| Defendant. | |

The court has considered plaintiff's Motion To Reverse And Remand For A Rehearing (doc. # 12), plaintiff's Memorandum In Support Of Motion To Reverse And Remand For A Rehearing (doc. # 13), Defendant's Response To Plaintiff's Motion To Reverse And Remand For A Rehearing (doc. # 14), Defendant's Motion For Summary Judgment And Response To Plaintiff's Motion To Reverse And Remand For Hearing (doc. # 15), defendant's Statement Of Facts In Support Of Defendant's Motion For Summary Judgment And In Opposition To Plaintiff's Motion To Reverse And Remand (doc. # 16), defendant's Memorandum In Support Of Defendant's Motion For Summary Judgment And In Opposition To Plaintiff's Motion To Reverse And Remand (doc. # 17), and plaintiff's Response To Memorandum In Support Of Defendant's Motion For Summary Judgment And In Opposition To Plaintiff' Motion To Reverse And Remand (doc. # 18).

1    Plaintiff Roanna T. Todacheeny ("Todacheeny") brought this action against the
2 Commissioner Of Social Security ("Commissioner") alleging that her applications for
3 Disability Insurance Benefits and Supplemental Security Income were wrongfully denied.
4 Todacheeny now moves for reversal of the decision below and a remand for a new hearing.
5 The Commissioner cross-moves for summary judgment.

**I.    Background**

Ms. Todacheeny, currently age 48, had a high school education and worked as a police officer until November 19, 2002. (doc. # 13 at 2; doc. # 16 at 2; Tr. at 35.) She originally injured her left knee in 1995 when she fell from a ladder, sustaining a displaced tibial fracture. (doc. # 13 at 3.) Todacheeny underwent multiple surgeries, including one to attach an Ilizarov frame— an apparatus consisting of metal rings encircling the leg, wires securing the rings to the bone and metal rods that connect the rings. (Tr. at 268; doc. # 13 at 4.) The Ilizarov frame was later removed when Todacheeny developed a profound infection at one of the pin sites. (Tr. at 264-65.) X-rays taken thereafter showed continued incomplete union of the tibial plateau. (Tr. at 261.)

Todacheeny continued to have pain and also sustained multiple falls to her knee, finally re-injuring it in early November of 2002. (Tr. at 294.) During a December 3, 2002 examination Dr. Dwight Burney found synovial thickening, tenderness, and crepitus. (Tr. at 294.) He noted degenerative changes and diagnosed her with post-traumatic arthrosis. (Tr. at 294.) His report showed that Todacheeny had swelling, giving-way symptoms, and pain, but that she walked without a limp and felt she was "recovering somewhat from her injury." (Tr. at 294.) A later study in January of 2003 showed advanced postemetic and degenerative change of the knee, and also mild patellofemoral degenerative change in her other knee. (Tr. at 370.) X-rays taken of her hip, which had also begun to cause Todacheeny pain, showed mild bilateral femoro acetubular degenerative changes. (Tr. at 371.)

In February of 2003 Todacheeny again twisted her left knee and reported left knee and hip pain. (Tr. at 333.) The clinic doctor found laxity, patellofemoral crepitus and grind, and diagnosed her with left knee medial and patellofemoral compartmental disease. (Tr. at 333.)

- 2 -

1    Todacheeny underwent physical therapy from March through May of 2003; progress
2 notes indicated that she tolerated the exercises well and at one point was even urged to "add
3 more low impact activities." (doc. # 16 at ¶ 4; Tr. at 319-28, 319.) An examination prior to
4 surgery to remove hardware from the knee in February 2004, however, revealed that
5 Todacheeny walked with a considerably modified gait favoring her left knee and experienced
6 severe post-traumatic arthritis. (doc. # 16 at ¶ 6.) Given her continued crepitus and pain,
7 Todacheeny was finally scheduled for a full knee-replacement surgery. (Tr. at 384, 388.)

8    Todacheeny filed applications for Disability Insurance Benefits on October 24, 2002
9 and July 14, 2003, and applications for Supplemental Security Income on January 7, 2003
10 and July 14, 2003. (doc. # 13 at 2.) She alleged in the applications that she had been
11 disabled since November 19, 2002, due to severe left knee problems. (doc. # 16 at 2.) After
12 a hearing before an Administrative Law Judge ("ALJ") on May 18, 2004, at which
13 Todacheeny and a vocational expert testified, the ALJ found that Todacheeny could no
14 longer perform her past relevant work as a police officer but could perform sedentary work.
15 (Tr. at 29; doc. # 13 at 2-3.) The ALJ therefore found Todacheeny not disabled and denied
16 her applications. (doc. # 13 at 3.)

17    The ALJ also found certain testimony of Todacheeny not credible. (Tr. at 19.) More
18 specifically, the ALJ found that "[t]he claimant's subjective complaint is not fully supported
19 by the objective medical evidence," and that "[t]he claimant's allegation that she is unable to
20 perform all work-related activities is not fully credible and not supported by the objective
21 medical evidence." (Tr. at 19.) As support for these findings, the ALJ noted:

> The evidence indicates the claimant has degenerative joint disease of the knee. An examination in December 2002, one month after her alleged onset date, reported improvement with knee pain. She underwent a series of physical therapy sessions, which she tolerated very well. A physical examination in November 2003 showed full range of motion of the left knee and no neurological deficits. Her treating physician recommended she perform low impact exercises. The claimant testified she is able to drive, perform light household chores, attends church and is able to lift up to 10 pounds. She is 5 feet, 3 inches tall and weighs 212 pounds. She is able to care for her personal needs. She does limited walking.

(Tr. at 19.)

Following the ALJ's determination, the Appeals Council declined Todacheeny's request for review, and Ms. Todacheeny appealed to this court. (doc. # 13 at 3.)

## II.     Standard Of Review

The court reviews only those issues raised by the party challenging the ALJ's decision. *See Lewis v. Apfel*, 236 F.3d 503, 517 n.13 (9th Cir. 2001). In its review the court "may set aside a denial of disability benefits only if it is not supported by substantial evidence or if it is based on legal error." *Jamerson v. Chater*, 112 F.3d 1064, 1066 (9th Cir. 1997) (citations omitted); *see Smolen v. Chater*, 80 F.3d 1273, 1279 (9th Cir. 1996). "Substantial evidence is relevant evidence which, considering the record as a whole, a reasonable person might accept as adequate to support a conclusion." *Flaten v. Sec'y of Health & Human Servs.*, 44 F.3d 1453, 1457 (9th Cir. 1995) (citations omitted). Such evidence is "more than a scintilla" but "less than a preponderance." *Smolen*, 80 F.3d at 1279 (citations omitted). As a general rule, "[w]here the evidence is susceptible to more than one rational interpretation, one of which supports the ALJ's decision, the ALJ's conclusion must be upheld." *Thomas v. Barnhart*, 278 F.3d 947, 954 (9th Cir. 2002) (citations omitted).

## III.    Legal Standard

Part 404.1520 of the Code Of Federal Regulations describes the five-step sequential evaluation process used in determining whether a claimant is disabled. The five steps are 1) whether the claimant is currently working, 2) whether the impairment is severe, 3) whether the impairment meets or equals an impairment in Appendix 1 of Subpart P of the regulations, 4) whether the claimant can perform work performed in the past, and 5) whether the claimant has the ability to perform other work. 20 C.F.R. § 404.1520(a)(4)(i-v). The questions are addressed in order; certain responses to these questions will lead to automatic eligibility or ineligibility. *See id.* The ALJ in Todacheeny's case made his decision at step five of the analysis. (*See* doc. # 16 at ¶ 8.)

Although the claimant bears the burden of proving disability during the first four steps of the sequential evaluation, "the burden shifts to the Commissioner in step five to show that

- 4 -

1 the claimant can perform other substantial gainful work." *Burch v. Barnhart*, 400 F.3d 676, 679 (9th Cir. 2005) (citations omitted); *see also Smolen v. Chater*, 80 F.3d 1273, 1289 (9th Cir. 1996) ("A claimant establishes a prima facie case of disability by showing that her impairment prevents her from performing her previous occupation." (citations omitted)). Where applicable, the medical-vocational guidelines can provide evidence of other jobs so as to allow the Commissioner to carry that burden. *Heckler v. Campbell*, 461 U.S. 458, 468 (1983). Where the guidelines are not applicable and there is not "other reliable evidence of a claimant's ability to perform specific jobs, the Secretary must use a vocational expert to meet that burden." *Magallanes v. Bowen*, 881 F.2d 747, 756 (9th Cir. 1989) (citations omitted). The ALJ asks hypothetical questions of the vocational expert containing the details of the claimant's impairments; the expert then recounts the number of suitable positions for the claimant in the national economy. Such suitable positions must be specifically referenced and include "realistic job opportunities." *Id.*

## III. Jobs In The National Economy: Hypothetical Questioning Of The Vocational Expert

"Hypothetical questions posed to the vocational expert must set out *all* the limitations and restrictions of the particular claimant, including, for example, pain and an inability to lift certain weights." *Embrey v. Bowen*, 849 F.2d 418, 422 (9th Cir. 1988). Otherwise the expert testimony is deemed to have no evidentiary value. *Matthews v. Shalala*, 10 F.3d 678, 681 (9th Cir. 1993). The limitation of evidence in a hypothetical question, however, "is objectionable only if the assumed facts could not be supported by the record." *Magallanes*, 881 F.2d at 757 (citations omitted). The ALJ need not include all claimed impairments in a hypothetical, moreover, where the ALJ properly finds the claimant's subjective complaints not credible. *See Light v. Soc. Sec. Admin.*, 119 F.3d 789, 793 (9th Cir. 1997).

According to Todacheeny, the ALJ in this case erroneously omitted four of Todacheeny's impairments from the hypothetical put to the vocational expert. The ALJ omitted Todacheeny's 1) constant pain, 2) need for frequent bathroom breaks, 3) obesity, and 4) need to regularly change position. (*See* Tr. at 58.) Leaving aside for the moment the issue

- 5 -

1  of whether the ALJ found these subjective complaints credible, the court addresses each
2  complaint in turn to determine whether the ALJ should have otherwise included them in the
3  hypothetical.

4        **A.**    **Exclusion Of Pain From Hypothetical**

5        The ALJ's omission of Todacheeny's constant pain as a restriction in the hypothetical
6  was not supported by the record. Like the hypothetical in *Gallant v. Heckler*, 753 F.2d 1450,
7  1456 (9th Cir. 1984), "[t]he hypothetical question asked of the vocational expert in this case
8  specifically excluded pain as a limitation to [the claimant's] exertional capabilities." (*See* Tr.
9  at 58.) Yet "[e]very medical report forming the basis of this record notes [the claimant's]
10 complaints of persistent [knee] pain." *Gallant*, 753 F.2d at 1455. "Contrary to the ALJ's
11 conclusion, the medical evidence and claimant's testimony depict an individual who cannot
12 sit, stand or walk for any length of time without severe pain, and who must alternate periods
13 of sitting, standing and walking throughout the course of each day. A [wo]man who cannot
14 walk, stand or sit for over one hour without pain does not have the capacity to do most jobs
15 available in the national economy." *Id.* at 1454 (citations and internal quotations omitted).

16       Todacheeny testified that on a scale of one to ten, her pain– even with medication–
17 was "constantly an eight." (Tr. at 48-49.) During flare-ups, which typically lasted a whole
18 day and occurred with a frequency of about twice a week, the pain was "a ten." (Tr. at 49.)
19 The medical evidence shows use of Tylenol #3, Oxycodone and Motrin— among other
20 drugs— for pain relief, (Tr. at 294), and the record is replete with references to her ongoing
21 pain. (*See, e.g.*, Tr. at 384-86; 308; 317-318) The hypothetical thus did not include all of
22 Todacheeny's impairments, and unless the ALJ properly found the pain complaint not
23 credible, the expert's testimony lacked evidentiary value. *See Gallant*, 753 F.2d at 1456.

24       **B.**    **Exclusion Of Need For Frequent Restroom Breaks From Hypothetical**

25       The ALJ's omission from the hypothetical of Todacheeny's need for frequent
26 bathroom breaks was also unsupported by the record. Todacheeny experienced bladder and
27 urinary tract problems that require her to take a bathroom break approximately once per hour.
28 (Tr. at 51, 315, 351, 382, 406.) The ALJ's hypothetical only posited that Todacheeny be able

to "occasionally stand briefly." (Tr. at 58.) The hypothetical thus excluded the need to use the restroom hourly, which could take more time or be a more complicated process than merely "standing briefly." The hypothetical therefore did not include all of Todacheeny's impairments. *Cf. Moore v. Halter*, 168 F. Supp. 2d 1137, 1141 (N.D. Cal. 2001) (holding that ALJ should have included limitation in hypothetical about the claimant's need for extended-length restroom trips); *Stoglin v. Apfel*, 130 F. Supp. 2d 1060, 1064 (S.D. Iowa 2000) ("The vocational expert also said that if [claimant] needed to use the bathroom at the frequency to which she testified, she would not be able to work . . . ."). Unless the ALJ properly found these complaints not credible, the expert testimony therefore lacked evidentiary value.

The court notes that this impairment might in no way limit the number of jobs available to Todacheeny, making its exclusion from the hypothetical irrelevant. The Commissioner has not asserted this argument, however, so the court does not address it. *See Arai v. Am. Bryce Ranches Inc.*, 316 F.3d 1066, 1070 n.4 (9th Cir. 2003).

### C.     Exclusion Of Obesity From Hypothetical

The ALJ's omission from the hypothetical of Todacheeny's obesity was supported by the record. Todacheeny does not cite to any mention in the record of functional limitations caused by her obesity. *Burch v. Barnhart*, 400 F.3d 676, 684 (9th Cir. 2005) (holding that ALJ need not include obesity in hypothetical where no functional limitations resulting from the obesity were mentioned in the record). The omission of any such limitation was therefore proper. *See DeLorme v. Sullivan*, 924 F.2d 841, 850 (9th Cir. 1991) ("In fact, since there are only passing references in the record to intermittent difficulties such as numbness in the fingers, there is substantial evidence to support excluding these considerations from the hypothetical.").

### D.     Exclusion Of Need To Change Position From Hypothetical

The ALJ's hypothetical to the vocational expert included the limitation that the claimant would need "the opportunity to occasionally stand briefly," (Tr. at 58), but did not more directly address Todacheeny's alleged need to alternate between sitting and standing

1  with specific frequency.  The omission was permissible.  The assessment of an individual's
2  capacity for work by the ALJ should "be specific as to the frequency of the individual's need
3  to alternate sitting and standing."  Social Security Ruling 96-9p; *see also Tackett v. Apfel*,
4  180 F.3d 1094, 1103-04 (9th Cir. 1999) (holding that the "need to shift, stand up, or walk
5  around every 30 minutes" was a significant non-exertional limitation different in kind than
6  the need to do so every two hours).  Todacheeny does not provide the court, however, with
7  references to evidence in the record that would have permitted the ALJ to make his question
8  more precise.  Todacheeny cites only a Disability Field Office form indicating Todacheeny
9  had difficulty sitting, standing and walking.  (Tr. at 207.)   In the absence of evidence
10 suggesting more specific restrictions were necessary, the omission was supported by the
11 record.  *See DeLorme*, 924 F.2d at 850 (holding that impairments only referenced in passing
12 can be omitted from hypothetical).

13 **IV.    Medical-Vocational Guidelines**

14       In lieu of a vocational expert, the Commissioner may use the medical-vocational
15 guidelines to show the existence of other substantial gainful work.  *See Heckler v. Campbell*,
16 461 U.S. 458, 461, 468 (1983) (holding that use of a vocational expert is not necessary when
17 a case falls within the medical-vocational guidelines).  It is true, as the Commissioner points
18 out, that the ALJ found that Todacheeny retained the residual functional capacity for
19 sedentary work, (Tr. at 19), and that the medical-vocational guidelines mandate a holding of
20 non-disabled for persons of Todacheeny's age, experience, and education who can perform
21 the full range of sedentary work.  *See* 20 C.F.R. 404 Subpt. P, App. 2, Rule 201.21 (2005).
22 The ALJ, however, did not base his decision on the medical-vocational guidelines, (Tr. at
23 20), likely because in determining Todacheeny's residual functional capacity he did not find
24 that she could perform "the whole range" of sedentary work as is required for the guidelines
25 to be applicable.  *See* 20 C.F.R. 404 Subpt. P, App. 2, § 201.00(h)(3); *Gallant*, 753 F.2d at
26 1456-57 ("[I]f the medical-vocational guidelines fail accurately to describe a claimant's
27 particular limitations, the Secretary may not rely on them alone to show the availability of
28 jobs for that claimant" (citations omitted)).  Regardless of why the ALJ chose not to use the

guidelines, though, this court must judge the propriety of the ALJ's decision solely on the grounds invoked by him in originally denying the benefits. *Pinto v. Massanari*, 249 F.3d 840, 847 (9th Cir. 2001) ("[W]e cannot affirm the decision of an agency on a ground that the agency did not invoke in making its decision." (citations omitted)). "Thus, if the Commissioner's contention invites this Court to affirm the denial of benefits on a ground not invoked by the Commissioner in denying the benefits originally, then [the court] must decline." *Id.* at 847-48.

## V.     Credibility Determination

As previously noted, the ALJ's omission of Todacheeny's subjective complaints from the hypothetical is permissible if the ALJ properly found Todacheeny's complaints not credible. In weighing a claimant's credibility, the ALJ may consider various factors, including the claimant's daily activities, effectiveness of pain medication, and relevant character evidence. *Bunnell v. Sullivan*, 947 F.2d 341, 346 (9th Cir. 1991). If the ALJ finds particular testimony of the claimant not credible, he must provide clear and convincing reasons for rejecting it. *Vertigan v. Halter*, 260 F.3d 1044, 1049 (9th Cir. 2001) ("[A]bsent affirmative evidence of malingering, an ALJ cannot reject a claimant's testimony without giving clear and convincing reasons." (citations omitted)). The ALJ also "must specifically identify the testimony she or he finds not to be credible and must explain what evidence undermines the testimony." *Holohan v. Massanari*, 246 F.3d 1195, 1208 (9th Cir. 2001) (citations omitted). "General findings are insufficient; rather, the ALJ must identify what testimony is not credible and what evidence undermines the claimant's complaints." *Lester v. Chater*, 81 F.3d 821, 834 (9th Cir. 1996). "The evidence upon which the ALJ relies must be substantial." *Id.* (citations omitted).

The ALJ in this case found that "[t]he claimant's allegation that she is unable to perform all work-related activities is not fully credible and not supported by the objective medical evidence." (Tr. at 19.) It is doubtful that the ALJ meant to refer specifically to Todacheeny's testimony of pain and urinary tract problems. Regardless of what testimony the ALJ was attempting to reference, his finding was insufficiently specific. An ALJ must

1  "specifically identify the testimony that she or he finds not to be credible." *Holohan*, 246
2  F.3d at 1208; *see also Smolen v. Chater*, 80 F.3d 1273, 1284 (9th Cir. 1996) ("The ALJ must
3  state specifically which symptom testimony is not credible and what facts in the record lead
4  to that conclusion."). General findings that a claimant lacks credibility are insufficient.
5  *Lester*, 81 F.3d at 834. Here, the ALJ made a general finding about Todacheeny's credibility
6  but dressed it up like the rejection of specific testimony. By attributing to Todacheeny an
7  "allegation" as broad as the ultimate issue in the proceeding— that she was "unable to
8  perform all work-related activities"— the ALJ's credibility finding is made to seem like the
9  rejection of specific testimony. But this word costume does not convert an otherwise-general
10 finding about credibility into a permissibly specific one. Whereas findings that specify what
11 testimony has been found not credible allow for judicial review, the finding here provides
12 the court with no guidance as to which testimony in particular has been disbelieved.
13 *Compare, e.g.*, *Burch v. Barnhart*, 400 F.3d 676, 681 (9th Cir. 2005) (ALJ reported that
14 "[claimant] alleged that she has had severe low back pain since her mastectomy in 1997.
15 However, the MRI and x-rays show . . . ."); *Reddick v. Chater*, 157 F.3d 715, 723 (9th Cir.
16 1998) (ALJ reported that "[o]n the Disability Report which [claimant] completed for her
17 initial interview she stated that her chronic fatigue syndrome caused her to be fatigued when
18 she performed hard physical labor or aerobics. Hard physical labor or aerobics would fatigue
19 an unimpaired individual and is not indicative of disability. . . ."); *Lester*, 81 F.3d at 833
20 (ALJ reported that "[t]he claimant's testimony on his pain limitations was not fully credible
21 . . . ."). The court therefore finds the ALJ's credibility determination improperly made. *See*
22 *Barbato v. Comm'r of Soc. Sec. Admin.*, 923 F. Supp. 1273, 1276 (C.D. Cal. 1996) ("The
23 ALJ's decision found Plaintiff's testimony 'not credibly indicative of a disabling degree of
24 functional limitation,' but did not address specifically the credibility of Plaintiff's testimony
25 regarding driving restrictions. Thus, substantial evidence fails to support the ALJ's assertion
26 that Dr. Jones 'has not restricted [claimant] from driving. . . .'").
27
28

## VI.   Conclusion

Because the ALJ did not properly find Todacheeny's testimony about pain and urinary tract problems to be lacking in credibility, those limitations should have been included in the hypothetical posed to the vocational expert in stage five of the five-step analysis. *Embrey v. Bowen*, 849 F.2d 418, 423 (9th Cir. 1988) ("Unless the record indicates that the ALJ had specific and legitimate reasons for disbelieving a claimant's testimony as to subjective limitations such as pain, those limitations must be included in the hypothetical in order for the vocational expert's testimony to have any evidentiary value."). Without those limitations the hypothetical had no evidentiary value, and the ALJ's decision based on the hypothetical ipso facto was not based on substantial evidence.

Todacheeny has urged the court only to "reverse the Commissioner's final decision and remand this matter for a rehearing," (doc. # 13 at 1), as opposed to pressing for an immediate award of benefits. In light of the court's discretion to remand the case for either further development of the record or for an award of benefits, *Reddick v. Charter*, 157 F.3d 715, 728 (9th Cir. 1998), and because "[i]n cases where the testimony of the vocational expert has failed to address a claimant's limitations as established by improperly discredited evidence, [the Ninth Circuit consistently has] remanded for further proceedings rather than payment of benefits," *Harman v. Apfel*, 211 F.3d 1172, 1178 (9th Cir. 2000) (citations omitted), the court grants only the relief requested. *See Varney v. Sec'y of Health & Human Servs.*, 859 F.2d 1396, 1399 (9th Cir. 1988) ("Because the claimant's attorney had failed to ask the appropriate hypothetical questions . . . there was *no* evidence in the record as to the jobs available for a person with the claimant's limitations. We held that a new hearing was required in order to develop the record thoroughly." (describing *Gamer v. Sec'y of Health & Human Servs.*, 815 F.2d 1275 (9th Cir. 1987)).

IT IS THEREFORE ORDERED that plaintiff Todacheeny's Motion To Reverse And Remand For A Rehearing (doc. # 12) is granted and that her case be remanded to the Commissioner for a rehearing.

1   IT IS FURTHER ORDERED that defendant Commissioner of Social Security's
2   motion for summary judgment (doc.# 15) is denied. The clerk is directed to terminate this
3   case.
4   DATED this 15th day of November, 2005.

Neil V. Wake
United States District Judge